UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ETHAN OVERTON EDWARDS,

Plaintiff,

-against-

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

Defendant.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-5047 (OEM) (TAM)

ORELIA E. MERCHANT, United States District Judge:

On August 18, 2026, *pro se* plaintiff Ethan Overton Edwards ("Plaintiff"), a 23-year-old Division III collegiate basketball player, commenced this antitrust action against the National Collegiate Athletic Association ("NCAA"), alleging that the "NCAA's refusal to recognize eligibility for 2022 enrollees who competed in Division III" under a new rule that grants five, rather than four, years of eligibility, "constitutes an arbitrary horizontal restraint" on trade in violation of the Sherman Act, 15 U.S.C. § 1 ("Sherman Act § 1"). Verified Complaint for Injunctive and Declaratory Relief ¶ 18, Dkt. 1 ("Complaint" or "Compl."). That same date, Plaintiff filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, Dkt. 3 ("Emergency Motion"), which is now fully briefed.[1] For the following reasons, Plaintiff's Emergency Motion is denied.

[1] *See* Defendant National Collegiate Athletic Association's Opposition to Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 10 ("Opposition" or "Opp'n"); Declaration of Noah W.S. Parson in Support of National Collegiate Athletic Association's Opposition to Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 9 ("Parson Decl."); Plaintiff's Reply Memorandum of Law in Further Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 11 ("Reply").

When citing the Emergency Motion or the Reply, the Court refers to the pagination contained in the automatically generated ECF header.

## BACKGROUND

### A. Factual Background

The NCAA is the "standard-setting body" for collegiate athletics, "compris[ing] about 1,100 colleges and universities, organized into three divisions." *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 76, 79 (2021). Each division is governed by its own constitution and bylaws, with "Division I teams . . . often [being] the most popular and attract[ing] the most money and most talented athletes." *Id.* at 79. *Compare, e.g.*, Parson Decl., Exhibit 1, Dkt. 9-1 (attaching an excerpt from the Division III 2026-27 Manual)*, with* Parson Decl., Exhibit 2, Dkt. 9-2 (attaching an excerpt from the Division I 2025-26 Manual).

Until recently, at the Division I level, the NCAA had determined eligibility based on a rule that had "permitted student-athletes to compete in up to four seasons of intercollegiate athletic competition over a five-year period . . . beginning from their initial full-time enrollment at a collegiate institution." Opp'n at 3-4; *see* Parson Decl., Exhibit 2, at Operating Bylaw 12.6, Dkt. 9-2 ("A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport."); Parson Decl., Exhibit 2, at Operating Bylaw 12.6.1, Dkt. 9-2 ("A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution . . . ."). "Intercollegiate athletic competition" was defined as competition occurring "when a student-athlete" is enrolled "in either a two-year or a four-year collegiate institution." Parson Decl., Exhibit 2, Dkt. 9-2 at Operating Bylaw 12.02.3; *id.* at Operating Bylaw 12.6.3.1 (stating that the rule is "applicable to intercollegiate athletics competition conducted by a two-year or four-year collegiate institution at the varsity or subvarsity level"). Under that regime, various "waivers" were available in certain

circumstances, such as medical hardship. *See id.* at Operating Bylaws 12.6.4 to 12.6.6.

On June 24, 2026, however, the "NCAA Division I Cabinet adopted a new age-based eligibility model" that provides that, beginning in 2026-27,[2] "NCAA Division I student-athletes will receive a five-year eligibility period beginning at the start of the academic year following their 19th birthday or upon full-time enrollment at a collegiate institution, whichever comes sooner, and student-athletes may compete during that five-year period of eligibility without restriction, provided they meet all other eligibility requirements." Opp'n at 5-6 (citing *NCAA Division I and Division II Age-Based Eligibility Rules*, NCAA, https://www.ncaa.org/eligibility-center/division-i-and-division-ii-age-based-eligibility-rules (last visited Aug. 20, 2026)). Importantly, the new "Age-Based Rule" does not apply retroactively. *Id.* at 6. "The transition guidance accompanying the rule provides that '[s]tudent-athletes whose fourth season of eligibility was [completed] by spring 2026' receive '[n]o additional eligibility.'" *Id.* (first and third alteration in original) (quoting NCAA Staff, *Division I Cabinet Continues Discussions of Age-Based Collegiate Eligibility Model*, NCAA (May 22, 2026), https://www.ncaa.org/media-center-division-i-cabinet-continues-discussions-of-age-based-collegiate-eligibility-model).

Division III has not yet adopted a similar provision. *Id.* In other words, Division III "remain[s] in the same position they were in prior to the rule change," Opp'n at 6, affording—as the Division I rules also used to afford—four, rather than five, years of eligibility, *see* NCAA, DIVISION III 2025-26 MANUAL at Operating Bylaw 14.2 ("A student-athlete shall not engage in more than four seasons of intercollegiate participation in any one sport."); Opp'n at 6-7.

Plaintiff is a 23-year-old collegiate men's basketball player who resides in Brooklyn, New

[2] At a conference on the Emergency Motion on August 25, 2026, the NCAA clarified that this new rule specifically went into effect on August 24, 2026. Transcript of Civil Cause for a Hearing Before the Honorable Orelia E. Merchant United States District Judge at 5:12-13 ("Tr.").

York. Compl. ¶ 8. By the spring of this year, he had played four years of Division III men's basketball: "three seasons at Brandeis University (2022-2025)" and "a fourth season as a graduate student at Case Western Reserve University (2025-2026)," where he graduated on May 16, 2026. *Id.* ¶ 15. Plaintiff acknowledges that he has not received any waivers or exceptions to the eligibility rules, which would extend his eligibility. *Id.* ¶¶ 1-5, 12-21; Emergency Motion at 1-2; Reply at 2-5; Tr. at 5:24-6:5.[3] However, Plaintiff alleges that "[o]n April 7, 2026," he "timely entered the NCAA Transfer Portal," with the intent of transferring to a Division I school. Compl. ¶ 16; Emergency Motion at 2. Plaintiff asserts that he has been unlawfully excluded from a fifth year of eligibility by the NCAA. Compl. ¶ 18; Emergency Motion at 1.

**B. Procedural History**

On August 18, 2026, Plaintiff filed his Complaint against the NCAA. *See generally* Compl. Plaintiff asserts that his exclusion of him from the NCAA's new Age-Based Rule "constitutes an arbitrary restraint of trade" under the Sherman Act § 1. *Id.* ¶ 5. Simultaneously, Plaintiff filed his Emergency Motion, seeking a temporary restraining order and preliminary injunction, as well a motion to proceed in district court *in forma pauperis*. *See generally* Compl.; Emergency Motion; Application to Proceed in District Court Without Prepaying Fees or Costs, Dkt. 2 ("IFP Motion"). Specifically, Plaintiff asks this Court to: "[i]ssue an immediate Temporary Restraining Order and Preliminary Injunction enjoining" the "NCAA from deeming Plaintiff ineligible to compete in intercollegiate athletics for the 2026-2027 academic year"; "[e]njoin" the "NCAA from enforcing any rule, penalty, or restitution . . . against any institution that recruits, rosters, awards athletic aid to, or allows Plaintiff to compete during the 2026-2027 academic year";

[3] At the conference on the Emergency Motion, on August 25, 2026, and in his Reply, Plaintiff explained that he attempted to receive, but did not receive, a "legislative waiver" pursuant to the 2025-2026 Division I and Division III rules in effect in April 2026. Tr. at 11:11-17, 14:14-17:3; Reply at 4, 7-8, 38-49.

"[w]aive any bond requirement pursuant to Fed. R. Civ. P. 65(c)"; "[e]nter a declaratory judgment confirming Plaintiff's eligibility for the 2026-2027 season"; and "[g]rant such other and further relief as the Court deems just and proper." Compl. ¶¶ A-E.

On August 19, 2026, the Court granted Plaintiff's IFP Motion, *see* Order, dated Aug. 19, 2026, and issued an order to show cause, setting a briefing schedule on Plaintiff's Emergency Motion, *see* Order to Show Cause, dated Aug. 19, 2026. Pursuant to that order to show cause, the NCAA filed its Opposition on August 22, 2026, *see* Opp'n; Parson Decl., and Plaintiff filed a reply on August 24, 2026, *see* Reply.

On August 25, 2026, the Court heard the parties' respective arguments at a telephonic conference. *See* Minute Entry, dated Aug. 25, 2026; Tr.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must satisfy all four of the following prerequisites:

> (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction.

*Cumulus Media New Holdings Inc. v. Nielsen Co. (US)*, 182 F.4th 108, 122, 124 (2d Cir. 2026) (quoting *Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023)). In deciding a preliminary injunction motion, a court "may consider the entire record including affidavits and other hearsay evidence." *Helio Logistics, Inc. v. Mehta*, 22-cv-10047 (NSR), 2023 WL 1517687, at *2 (S.D.N.Y. Feb. 3, 2023); *accord Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

This standard is "'higher, however, where the movant seeks to modify the status quo by virtue of a mandatory preliminary injunction' or 'where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Cumulus Media*, 182 F.4th at 124 (quoting *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 & n.3 (2d Cir. 2021)). Where either scenario applies, a plaintiff must "show a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm." *Id.* (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

Courts in this Circuit apply the same substantive standard to applications for a temporary restraining order and a preliminary injunction. *See, e.g.*, *Loc. 1814 v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992) (affirming a ruling applying the same standards to both forms of relief); *Helio Logistics*, 2023 WL 1517687, at *2.

**DISCUSSION**

Plaintiff argues that he is entitled to a temporary restraining order and preliminary injunction because he can establish all four required elements: "(1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tips in plaintiff's favor; and (4) that public interest favors the injunction." Emergency Motion at 1. The NCAA counters that Plaintiff is subject to the heightened preliminary injunction and temporary restraining order standard, which he cannot meet as to any element. Opp'n at 9-20. Thus, the Court begins by determining the appropriate standard to apply before turning to whether Plaintiff has established the elements required to obtain the emergency injunctive relief requested.

**A. The Heightened Standard for Injunctive Relief Applies.**

Because Plaintiff's requested relief would alter the status quo, rather than preserve it, the

heightened standard applies to Plaintiff's Emergency Motion. The status quo refers to "the last actual, peaceable uncontested status which preceded the pending controversy." *Cumulus Media*, 182 F.4th at 124. Prior to this litigation, the last uncontested status between the parties was at the end of the 2025-2026 basketball season, marking Plaintiff's fourth year of competition pursuant to Division III's eligibility rules in effect at that time. Compl. ¶ 4; NCAA, DIVISION III 2025-26 MANUAL at Operating Bylaw 14.2. Under those rules, Plaintiff concedes that he played three Division III men's basketball seasons at Brandeis University from 2022-2025 and one Division III season of men's basketball at Case Western Reserve University from 2025-2026, with no waiver extending his eligibility. *See* Compl. ¶¶ 12-18; Emergency Motion at 1-2; Tr. at 5:24-6:5, 10:24-11:3.

Through his Emergency Motion, however, Plaintiff seeks a fifth year of eligibility as a Division III transfer under the new Division I Age-Based Rule. Compl. ¶¶ 12-18; Reply at 3-4. Plaintiff acknowledges that he was not entitled to a fifth year of eligibility under the 2025-2026 Division III rules, Tr. at 5:24-6:5, 10:24-11:3, and was not entitled to a fifth year of eligibility under the former Division I rule; he also acknowledges that he is not entitled to a fifth year of eligibility under the new Division I Age-Based Rule or current Division III rules, Opp'n at 3-7 (citing *NCAA Division I and Division II Age-Based Eligibility Rules*, NCAA, https://www.ncaa.org/eligibility-center/division-i-and-division-ii-age-based-eligibility-rules (last visited Aug. 20, 2026)); Parson Decl., Exhibit 2, at Operating Bylaws 12.6 to 12.6.1, Dkt. 9-2. Therefore, Plaintiff's desired relief would effectively force the NCAA to take the affirmative step of making an exception where none exists, as opposed to merely restraining it from imposing the challenged rule. *See Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (describing the difference between a "prohibitory" injunction and a

"mandatory" injunction as follows: "the former typically requires the non-movant to take some action, whereas the latter typically requires the non-movant to refrain from taking some action"). *Compare Phillip v. Fairfield Univ.*, 118 F.3d 131, 134 (2d Cir. 1997) (viewing a requested injunction as prohibitory where it restrained the NCAA "from further interfering with [the plaintiff's] ability to receive aid and play basketball" and "permitted [the university] and [the plaintiff] to continue the relationship to which they had agreed")*, with N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (affirming the district court's application of the heightened preliminary injunction standard where the plaintiff's requested relief would "upend the federation-league sanctioning framework" that governed the parties' relationship)*, and Brzovic v. Nat'l Collegiate Athletic Ass'n*, 2:25-cv-02885-DCN, 2025 WL 1370758, at *3 (D.S.C. May 11, 2025) (determining that the plaintiff's desired temporary restraining order and preliminary injunction were mandatory in nature where the plaintiff challenged the NCAA's four years of competition within five years rule, among other rules, as a violation of Sherman Act § 1, because the relief would "[p]revent[] the NCAA from enforcing rules currently in effect"); *Johnson v. Nat'l Collegiate Athletic Ass'n*, CV 25-60-M-KLD, 2025 WL 1790345, at *7 (D. Mont. June 26, 2025) (same, observing that the plaintiff was "asking the Court to prevent the NCAA from enforcing the Challenged Rules that are currently in effect and alter the status quo by granting him an additional season of competition he is not presently entitled to").

Plaintiff's argument to the contrary is unpersuasive. Plaintiff asserts that he seeks "purely prohibitive" relief because he "does not ask this Court to command any college coach to award him a scholarship, roster jersey, or guaranteed playing time." Reply at 2. He contends that he "seeks only to prohibit the NCAA from enforcing its anti-competitive eligibility restrictions." *Id.* While the question of whether "an injunction is 'mandatory' or 'prohibitory' is sometimes

unclear,'" for example, in breach-of-contract cases, this is not one of those "borderline cases." *Daileader*, 96 F.4th at 356 (quoting *N. Am. Soccer League*, 883 F.3d at 36-37); *see Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiff concedes that, under the status quo ante, he had played his allotted four years of competition. Tr. at 5:24-6:5; 10:24-11:3. Granting him a fifth year of eligibility now would disrupt the parties' positions. Thus, Plaintiff's Emergency Motion requests a mandatory injunction requiring application of the heightened standard. Nevertheless, as explained below, Plaintiff's Emergency Motion fails under both the heightened standard requiring a showing of clear or substantial likelihood of success on the merits and the lower prohibitory standard.

**B. Plaintiff Has Failed to Show a Likelihood of Success on the Merits.**

Next, the Court considers whether Plaintiff has met the requisite factors for injunctive relief. On the first factor, "a clear or substantial likelihood of success on the merits," *Cumulus Media*, 182 F.4th at 124 (quoting *Schneiderman*, 787 F.3d at 650), Plaintiff argues that "NCAA eligibility restraints are subject to antitrust scrutiny" under *NCAA v. Alston*, 594 U.S. 69, and that "[r]estricting Plaintiff based on past Division III participation has no pro-competitive justification and constitutes and unlawful restraint of trade." Emergency Motion at 1. In doing so, Plaintiff relies on a July 31, 2026, decision granting a preliminary injunction in *Wisne v. NCAA*, 26-CV-3063 (CNS) (KAS), a class action before the U.S. District Court for the District of Colorado, which also challenges the NCAA's Age-Based Rule. *See* Emergency Motion at 1. *See generally Wisne v. Nat'l Collegiate Athletic Ass'n*, 1:26-cv-03063-CNS-KAS, 2026 WL 2214234 (D. Colo. July 31, 2026). Plaintiff contends that the "relevant geographic market is nationwide" and that the "relevant product and services markets include: (a) the market for elite collegiate athletic labor and competition in NCAA Men's Basketball; and (b) the commercial market for student-athlete Name,

Image, and Likeness [(‘NIL’)] licensing opportunities.” Compl. ¶¶ 10-11.

In response, the NCAA asserts that Plaintiff has not shown a likelihood of success on the merits because “the NCAA’s implementation of the age-based eligibility model is not an ‘unreasonable restraint.’” Opp’n at 13 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018)). The NCAA contends that the Emergency Motion fails on the first step of the applicable rule-of-reason analysis because Plaintiff has not shown that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market, but even if he had satisfied that step, the NCAA argues that it has a procompetitive rationale for the rule that Plaintiff has not shown could be reasonably achieved through less anticompetitive means. *Id.* at 13-17.

Plaintiff fails to establish a clear or substantial likelihood of success on the merits. The Sherman Act § 1 provides that “[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.” 15 U.S.C. § 1. Interpreting this provision, the Supreme Court has “long recognized” that the phrase “restraint of trade” means “undue restraint.” *Alston*, 594 U.S. at 81 (quoting *Am. Express*, 585 U.S. at 540). Ascertaining whether a restraint is undue “presumptively” requires a rule-of-reason analysis in which a court “‘conduct[s] a fact-specific assessment of market power and market structure’ to assess a challenged restraint’s ‘actual effect on competition.’” *Id.* (first quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006); and then quoting *Am. Express*, 585 U.S. at 541).[4] In doing so, the Court engages in three, burden-shifting steps:

[4] Plaintiff is silent on the applicable antitrust standard for the Age-Based Rule. He does not assert, for example, that the rule constitutes a *per se* unreasonable restraint or advocate for some other approach on the “sliding scale” of antitrust scrutiny. VII PHILIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW 368 (5th ed. 2023); *see Alston*, 594 U.S. at 88-89; Compl. ¶¶ 12-21; Emergency Motion at 1; Reply at 1-6. The NCAA further agrees that the rule-of-reason analysis applies. *See* Opp’n at 13-17. Thus, the Court assesses the alleged restraint under the presumptive rule of reason. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 55-56 (2d Cir. 2019) (similarly applying the rule-of-reason analysis where “[n]either party contend[ed] that the restraints at issue in [that] case . . . [were] *per se* unreasonable”); *N. Am. Soccer League*, 883 F.3d at 41 (“Regulation of league sports is a textbook example of when the rule of reason applies.”).

(1) first, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market"; (2) "[i]f the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint"; (3) "[i]f the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Am. Express*, 585 U.S. at 541-42.[5]

Plaintiff's Emergency Motion fails at the first step of the rule-of-reason analysis. A plaintiff must both define the relevant market, *see Am. Express*, 585 U.S. at 543 ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." (alterations in original) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965))); *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011), and put forward evidence of an anticompetitive effect, whether "directly," through "'proof of actual detrimental effects [on competition],' such as reduced output, increased prices, or decreased quality in the relevant market," or "indirectly," through "proof of market power plus some evidence that the challenged restraint harms competition," *Am. Express*, 585 U.S. at 542-43 (alteration in original) (quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460 (1986)).

Here, Plaintiff has not done so. Instead, he simply asserts, in a conclusory fashion, that the relevant market is the "nationwide . . . market for elite collegiate athletic labor and competition in NCAA's Men's Basketball" and the market "for student-athlete [NIL] licensing opportunities." Compl. ¶¶ 10-11. Plaintiff contends, without support, that the challenged restraint has a substantial

[5] To succeed on a Sherman Act § 1 claim under Second Circuit precedent, a plaintiff must additionally establish that "a contract, combination, or conspiracy exists." *1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 114 (2d Cir. 2021); *see N. Am. Soccer League*, 883 F.3d at 38-45. Neither Plaintiff nor the NCAA put forward arguments on this element, *see generally* Emergency Motion; Reply; Opp'n, and the Court need not reach this given its determination that Plaintiff has not shown a likelihood of success as to whether the Age-Based Rule constitutes an undue restraint.

anticompetitive effect. *See id.* ¶ 21 (contending that the "eligibility restrictions artificially limit student-athlete labor, suppress market compensation and NIL opportunities"); Emergency Motion at 1 (asserting that the eligibility rule "has no pro-competitive justification and constitutes an unlawful restraint of trade").

From these bare assertions, the Court cannot adequately define the relevant market nor ascertain how, why, or whether the challenged restraint has a substantial anticompetitive effect that harms consumers in that market. Nor could the Court proceed to determine whether any purported procompetitive efficiencies tied to the Age-Based Rule could be achieved through less anticompetitive means. Even affording Plaintiff the liberal construction to which he is entitled as a *pro se* litigant, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), these assertions are not enough to warrant the extraordinary relief he seeks, *see, e.g.*, *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 470-71 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) (engaging in the "highly fact-intensive inquiry" of market definition in Sherman Act § 1 case involving a challenge to the U.S. Soccer Federation's standards for divisional play and ultimately denying the preliminary injunction); *Fourqurean v. Nat'l Collegiate Athletic Ass'n*, 143 F.4th 859, 871 (7th Cir. 2025) (reversing the district court's imposition of an injunction enjoining the NCAA from enforcing its four years of competition within five years rule on the "dearth of evidence (or even allegations) of anticompetitive effect" offered by the plaintiff); *Larry v. Nat'l Collegiate Athletic Ass'n*, 25-cv-01761-GPG-CYC, 2025 WL 2725188, at *3 (D. Colo. Aug. 6, 2025) (denying injunctive relief where the *pro se* plaintiff, who also challenged the NCAA's four years of competition within five years rule, failed to satisfy the first step in the rule-of-reason analysis due to a lack of evidence), *report & recommendation adopted*, 25-cv-01761-GPG-CYC, 2025 WL 3516165 (D. Colo. Aug. 29, 2025); *Brzovic*, 2025 WL 1370758, at *4 (denying

injunctive relief where the plaintiff solely put forward a "cursory, unsubstantiated definition of the relevant market for the court to analyze").

Plaintiff's arguments to the contrary are unavailing. Plaintiff cites *Alston* for the proposition that "the NCAA and its member institutions collectively enjoy undisputed monopsony power in the market for student-athlete labor," such that Plaintiff does not need to put forward evidence regarding the relevant market and the anticompetitive effects of the Age-Based Rule. Reply at 2. However, *Alston* expressly did not address market definition and anticompetitive effects of the challenged rule because they were not the subject of the appeal. *See Alston*, 594 U.S. at 86-87 ("Before us, as through much of the litigation below, some of the issues most frequently debated in antitrust litigation are uncontested. The parties do not challenge the district court's definition of the relevant market. They do not contest that the NCAA enjoys monopoly (or, as it's called on the buyer side, monopsony) control in that labor market . . . . With all these matters taken as a given, we express no views on them."). In deciding *Alston*, the Supreme Court relied on the "voluminous record" developed by the district court, wherein the plaintiffs adduced evidence that "the NCAA enjoys the power to set wages in the market for student-athletes' labor—and that the NCAA has exercised that power in ways that have produced significant anticompetitive effects. Perhaps even more notably," there, "the NCAA 'did not meaningfully dispute this conclusion." *Id.* at 97-98. Moreover, *Alston* concerned only "current and former student-athletes in men's Division I [Football Bowl Subdivision] football and men's and women's Division I basketball." *Id.* at 80.

Here, Plaintiff is a Division III men's basketball player. Compl. ¶¶ 3-4. Unlike the plaintiffs in *Alston*, Plaintiff has not adduced any evidence regarding the market definition or anticompetitive effects of the challenged rule, and the NCAA does contest Plaintiff's alleged

market definition and anticompetitive effects. *See, e.g.*, *Elad v. Nat'l Collegiate Athletic Ass'n*, 160 F.4th 407, 416-17 (3d Cir. 2025) (The Third Circuit reversed the district court's imposition of an injunction enjoining the NCAA from enforcing its four years of competition within five years rule on the basis that, among other things, the plaintiff's expert "exclusively relie[d] on *Alston* to define the relevant market" and cited "no market evidence or economic data." The panel additionally noted that the plaintiff's expert opinion "concern[ed] all college-football players," whereas "*Alston* concerned only a specific subset of NCAA Division I football and basketball athletes."); *Larry*, 2025 WL 2725188, at *3 (similarly denying a *pro se* plaintiff's preliminary injunction motion where he failed to adduce evidence of the market or anticompetitive effects and instead relied on *Alston*).

Similarly, *Wisne* offers Plaintiff little support. *Wisne* is proceeding before the non-binding U.S. District Court for the District of Colorado and involves a class action limited to Division I, rather than Division II or III, athletes. *See generally Wisne*, 2026 WL 2214234, at *1-2. It does not address Plaintiff's circumstances as a Division III transfer.[6] Even if it did, *Wisne* is distinguishable on the basis that, there, the plaintiffs put forward "specific, empirical evidence" supporting their definition of the labor market and its anticompetitive effects. *Id.* at 14; *see id.* at 10-16. Here, however, Plaintiff has failed to do so, nor has he cited any authority suggesting that *Wisne*'s prior determination of a temporary restraining order and preliminary injunction concerning a different division of athletes somehow precludes this Court from considering the issue. Moreover, on August 21, 2026, the U.S. Court of Appeals for the Tenth Circuit stayed the injunction in *Wisne*, in part because it determined that the NCAA had "made a strong showing that

[6] *Moore v. National Collegiate Athletic Association*, 26-CV-3837 (RMR) (NRN), is a class action concerning Division II and III athletes based in the U.S. District Court for the District of Colorado. Notably, the plaintiffs in that action do not seek emergency relief, and the case has not yet resulted in any decision or binding legal authority relevant to Plaintiff's claims before this Court.

[it] is likely to succeed on the merits." Order, *Wisne v. Nat'l Collegiate Athletic Ass'n*, 26-1309, at *1 (10th Cir. Aug. 21, 2026), Dkt. 28 (per curiam).

Further, to the extent that Plaintiff asserts that he is not required to precisely define the relevant market and put forward evidence on that score because he alleges a horizontal restraint, *see* Reply at 2-3, the Second Circuit has declined to adopt this expansive view, *see Choh v. Brown Univ.*, 24-2826, 2026 WL 1210124, at *2 (2d Cir. May 1, 2026). But even if the Court were to assume that Plaintiff had put forward sufficient evidence from which the Court could precisely define the market, Plaintiff still cannot establish a likelihood of success on the merits due to a failure to substantiate his legal conclusions regarding the Age-Based Rule's anticompetitive effects.

Accordingly, Plaintiff has not shown a clear or substantial likelihood of success on the merits.[7] Having found that plaintiff cannot establish this first required element for injunctive relief, the Court need not analyze the remaining elements. *See, e.g.*, *Madison Square Garden, L.P. v. Nat'l Hockey League*, 07 CV 8455(LAP), 2007 WL 3254421, at *9 (S.D.N.Y. Nov. 2, 2007) (ceasing the preliminary injunction analysis after concluding that the plaintiff had failed to show a likelihood of success on the merits or a sufficiently serious question going to the merits in a case brought pursuant to Sherman Act § 1, among other authorities), *aff'd*, 270 F. App'x 56 (2d Cir. 2008).

---

[7] Even if the lower, prohibitory injunction standard were to apply, Plaintiff has still not shown a "likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [his] favor," *Cumulus Media*, 182 F.4th at 124, because Plaintiff has failed to adduce evidence substantiating his assertions. *Compare, e.g.*, *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 444 (2d Cir. 1977) (affirming a district court's grant of a preliminary injunction where the plaintiff had submitted "affidavits, depositions, and various exhibits" that raised "serious questions going to the merits," even while those materials did not necessarily meet the likelihood of success standard)*, with Madison Square Garden, L.P. v. Nat'l Hockey League*, 270 F. App'x 56, 59 (2d Cir. 2008) (affirming the district court's denial of a preliminary injunction under the lower standard where the plaintiff did not show "an actual adverse effect on competition in the relevant market" or that the purported procompetitive benefits "could be achieved through an alternative means that is less restrictive of competition").

**CONCLUSION**

For the foregoing reasons, Plaintiff's Emergency Motion is denied.

Given Plaintiff's *pro se* status, Plaintiff is granted leave to amend his Complaint, should he choose to amend, by September 4, 2026. For free, confidential, limited-scope legal assistance, Plaintiff may wish to contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project in Brooklyn by calling (212) 382-4729 or online at https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project. The Federal Pro Se Legal Assistance Project is not a part of, or affiliated with, the Court.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

August 26, 2026
Brooklyn, New York